UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILLIAM ANTHONY BOURASSA,

                                    Plaintiff,

                    v.                                 1:12-CV-1476
                                                            (FJS/CFH)

BLACK & DECKER (U.S.) INC. and
DEWALT INDUSTRIAL TOOL CO.,

                                    Defendants.
_____

**APPEARANCES**                               **OF COUNSEL**

**LAW OFFICE OF PAUL**             **PAUL PELAGALLI, ESQ.**
**PELAGALLI, PLLC**
20 Prospect Street
Suite 212
Ballston Spa, New York 12020
Attorneys for Plaintiff

**THORN GERSHON TYMANN AND**     **ARTHUR H. THORN, ESQ.**
**BONNANNI LLP**                         **MATTHEW H. MCNAMARA, ESQ.**
5 Wembley Court
New Kerner Road
P.O. Box 15054
Albany, New York 12212-5054
Attorneys for Defendants

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

William Anthony Bourassa ("Plaintiff"), who is a resident of New York State, brings this case against Defendant Black & Decker (U.S.) Inc. ("Defendant" or "Black & Decker"), a Maryland corporation,[1] alleging five causes of action, to wit (1) negligence, (2) defective design,[2] (3) failure to warn, (4) strict products liability, and (5) breach of express and implied warranty as a result of injuries he sustained from a drill that Defendant manufactured and sold.

Currently before the Court is Defendant's motion for an order excluding the expert testimony of Plaintiff's witness, Roger N. Wright, and for summary judgment dismissing Plaintiff's complaint in its entirety.

**II. BACKGROUND**

Plaintiff alleges that he purchased a DeWalt Heavy-Duty ½ inch (13 mm) drill, model number DW235G and serial number 831265 ("the DeWalt drill") from retailer Curtis Lumber in the Town of Ballston Spa, New York on or about August 28, 2009. *See* Complaint at ¶ 10. Plaintiff alleges that Defendant Black & Decker designed, manufactured, tested, warranted, distributed, and sold the DeWalt drill. *See id.* at ¶¶ 12-13. Plaintiff alleges that on October 30, 2009, at approximately 5:00 p.m., while operating the aforementioned DeWalt drill for its

---

[1] Defendant DeWalt Industrial Tool Co. ("Defendant" or "DeWalt") is not a legal corporate entity. *See* Answer at 1. DeWalt is a business trade name that Defendant Black & Decker uses. *See* Complaint at ¶ 8; Answer at 1. The Court will therefore address Defendant in the singular.

[2] Plaintiff uses the language "defectively designed and manufactured" in his Complaint. *See* Complaint at ¶ 21. However, Plaintiff admits, "There is no allegation of a manufacturing defect." *See* Response to Interrogatories at ¶ 11.

intended and reasonably foreseeable purpose, Plaintiff was seriously injured due to the defective condition of the DeWalt drill.  *See id.* at ¶ 15.

Plaintiff alleges that there is a design defect in the DeWalt drill, which caused the slide handle's grip on the rest of the drill to slip, allowing the drill to rotate while the side handle remained static, thereby causing his injury.

### III. DISCUSSION

**A.** *Standard of review*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  At the summary judgment stage, the court's role is to determine "whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  In making this determination, the court must view the evidence in the record and draw all reasonable inferences in the light most favorable to the non-moving party.  *See Consol. Risk Servs., Inc. v. Auto. Dealers WC Self Ins. Trust*, No. 1:06–CV–871, 2010 WL 2735701, *3 (N.D.N.Y. July 9, 2010) (citation omitted).

**B.** *Plaintiff's first, second, and fourth causes of action for negligence, negligent design, and strict products liability*

Plaintiff has conceded, "There is no allegation of a manufacturing defect."  *See* Response to Interrogatories at ¶ 11.  He has alleged no other negligent activity besides Defendant's design

of the DeWalt drill. *See* Complaint at ¶¶ 17-18, 21-24. His first cause of action for negligence is therefore duplicative of his second cause of action for defective design.

Furthermore this Court has recognized that "New York courts generally consider strict products liability and negligence claims based on defective design to be 'functionally synonymous.'" *Pinello v. Andreas Stihl AG & Co. KG*, No. 8:08-CV-00452, 2011 WL 1302223, *16 (N.D.N.Y. Mar. 31, 2011) (citing *Penny v. Ford Motor Co.*, 87 N.Y.2d 248, 639 N.Y.S.2d 650, 662 N.E.2d 730 (1995)). Courts analyze both types of claims under a single test. *See id.* (citations omitted). Therefore, Plaintiff's negligence and defective design claims are both subsumed by his claim of strict products liability, which this Court will now address.

**C.** *Strict liability claim based on defective design*

As the court stated in *Quiles v. Bradford-White Corp.*,

> "In order to establish a *prima facie* case in strict products liability for design defects, the plaintiff must show that the manufacturer breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury."

No. 10-CV-747, 2012 WL 1355262, *4 (N.D.N.Y. Apr. 18, 2012) (quoting *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 107, 463 N.Y.S.2d 398, 450 N.E.2d 204 (1983)). In order to determine whether Defendant marketed the DeWalt drill with a design defect, the Court must determine whether a reasonable person, knowing of the product's condition, "'would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner.'" *Steuhl v. Home Therapy Equip., Inc.*, 51 A.D.3d 1101, 1103-04 (3d Dep't 2008) (quoting *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 257 [1995], quoting *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d at 108).

4

This requirement usually demands that a plaintiff introduce expert testimony that a feasible alternative design exists. *See Quiles,* 2012 WL 1355262, at *4 (quotation omitted). Specifically, the plaintiff's expert must "demonstrate[e], through testing and construction of a prototype, that an alternative is feasible, practical, economical and safe; or, [otherwise, that other] manufacturers of similar equipment . . . have put the proposed design into use." *Id.* at *5 (citing *Rypkema v. Time Mfg. Co.*, 263 F. Supp. 2d 687, 692 (S.D.N.Y. 2003). "'The only exception to this rule is if a reasonable alternative design is both obvious to and understandable by a layperson.'" *Id.* (quoting *Soliman v. Daimler, AG*, 2011 WL 6945707, at *5 (E.D.N.Y. Aug. 8, 2011)).

Here, Plaintiff has not properly offered[3] an alternative to Defendant's design of the DeWalt drill, nor has he alleged that an alternate design would be obvious to or understandable by a layperson. Therefore, an expert's testimony is required.

Rule 702 of the Federal Rules of Evidence governs the admissibility of all expert testimony and provides, in pertinent part, as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if, (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

---

[3] Plaintiff's proffered expert submitted an untimely affidavit in which he alleged that other drills use an alternate design to achieve similar effects. *See* Dkt. No. 20-1, Affidavit in Opposition to the Defendants' Motion for Summary Judgment ("Wright Aff.") at ¶ 11. For reasons discussed in n.3, *infra*, this Court will not consider this untimely submission.

As an initial matter, the expert must be qualified to testify in the specific technical or specialized area at issue. *See Eagleston v. Guido*, 41 F.3d 865, 873-74 (2d Cir. 1994). An expert, although generally qualified, may not be competent to render opinions under the circumstances of a particular case which are outside the expert's area of expertise. *See Quintanilla v. Komori Am. Corp.*, No. CV 04-5227, 2007 WL 1309539, *4 (E.D.N.Y. May 4, 2007), *aff'd,* 2009 WL 320186 (2d Cir. Feb. 10, 2009).

The court must next determine whether the expert's methodology is reliable and trustworthy. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993); *see also* Fed. R. Evid. 401. Where an expert's analysis regarding the dangers of a product have not been tested, where the analysis has not been submitted to peer review, and where the expert makes no reference to the rate of error in his analysis or its general acceptance within the scientific community, this Court has found that such evidence must be precluded due to its lack of reliable foundation. *See Pinello*, 2011 WL 1302223, at *9.

Furthermore, an expert opinion that is not "sufficiently tied" to the facts of the case and reliably applied to those facts does not adequately fulfill the requirements for admissibility. *Daubert*, 509 U.S. at 591-92 (quotations omitted); *see also Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002); *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141 (1999).

Plaintiff's proffered expert, Dr. Wright, is a metallurgical and materials engineer by training and experience. *See* Dkt. No. 17-16, Deposition of Roger N. Wright, Sc.D. ("Wright Depo." at 4-5). Dr. Wright opines that the slide handle on the DeWalt drill "presents a major hazard insofar as it is vulnerable to gross slipping, resulting in loss of operator control." *See generally* Dkt. No. 17-6, Remarks on the Failure of a DeWALT Model DW235G Heavy Duty ½-

inch Drill Assembly ("Wright Report") at 5. He further opines that this slippage is due to the fact that the contact areas between the side handle and the drill are made of "aluminum alloy, and aluminum alloys are vulnerable to unstable 'stick-slip' response to frictional contact." *See id.* He further states that the "instructions provided with the drill and the side handle are quite inadequate . . ." for instructing the user as to how to properly twist the slide grip until the connection is tight enough. *See id.* At one point, Dr. Wright states,

> The interface between the side handle ring and the smooth cylindrical surface of the drill involves no "tongue-in-groove" relationship (parallel to the drill axis) which would "back-stop" respective motion of the side handle ring and smooth drill surface, in the event of a frictional breakdown.

*See id.* at 2. He further opines that the drill responds in an unstable manner to its variable speed trigger, which "can destabilize the loading on the side handle attachment, thus increasing the risk of an injury such as sustained by Mr. Bourassa." *See id.* at 5.

Defendant argues that Dr. Wright is not qualified to testify under Rule 702 because he has no familiarity with applicable standards on the design and manufacture of power drills, nor has he reviewed materials relevant to the action in rendering his opinions. *See* Dkt. No. 17-22, Defendant's Memorandum of Law ("Defendant's Memo.") at 8-9. Alternatively, Defendant contends that, even if Dr. Wright is qualified to testify, the methodology underlying his opinions is insufficiently reliable. *See id.*

Defendant also argues that Dr. Wright's proffered testimony is based upon insufficient facts or data, which would fail to satisfy one of the *Amorgianos* criteria for admissibility of expert testimony. *See id.* at 9; *Amorgianos,* 303 F.3d at 265. Defendant notes that Dr. Wright's report lacks any indicia that he considered materials that Defendant provided for this case, including deposition transcripts and engineering and design materials. *See* Defendant's Memo.

at 9 (citing Wright Report). The user comments on *Amazon.com*, which Dr. Wright did consider, Defendants describe as unreliable and unsubstantiated.

Defendant further notes that Dr. Wright's report indicates he analyzed only an exemplar of the DeWalt drill and not the drill that allegedly harmed Plaintiff. *See id.* (citing Wright Report).

Finally, Defendant argues that Dr. Wright's report failed to offer an alternative design to that of the DeWalt drill, as required to establish a *prima facie* case of design defect under New York Law according to *Quiles*. *See id.* at 10; *Quiles*, 2012 WL 1355262, at *4.

Plaintiff argues that Dr. Wright's "extensive teaching and research experience in metallurgy and metals processing" as well as his experience as the owner of a "private consulting business" qualify him to testify as an expert in this case. *See* Dkt. No. 19 at 5. Plaintiff points out that Dr. Wright "examined the subject drill and side handle" as well as an exemplar thereof, and he did speak with Plaintiff himself about what happened on the day of the accident. *See id.* Plaintiff argues that Dr. Wright used reliable methods of measuring "the instability of the coefficient of friction that results from scoring on the aluminum alloy surfaces of the drill body and the side handle." *See id.* at 6. Plaintiff then alleges that Dr. Wright "look[ed] at a design that is used in other drills on the market, the 'tongue-in-groove' design, which could have been feasible in this product to impede slippage of the side handle." *See id.*

Finally, Plaintiff asserts that an expert's lack of familiarity with a specific item and experience with that item go to weight of the expert's testimony and not its admissibility. *See* Dkt. No. 19 at 7 (citing *Argonaut Ins. Co. v. Samsung Heavy Indus. Co. Ltd.*, 929 F. Supp. 2d 159, 172 (N.D.N.Y. 2013)).

Notwithstanding Plaintiff's assertions as to the qualifications of Dr. Wright, it is clear that he lacks experience in the particular issue at hand: the safe design and manufacture of handheld power tools. *See* Wright Depo. at 34. He has assisted an attorney with preparation of a case involving drill bits, but otherwise he has no experience working on cases involving power drills. *See id.* at 32-33. He also has no experience in designing instruction manuals or warnings for power tools.

Furthermore, the methodology through which Dr. Wright formed his opinions lacks reliability. He did not even consider many of the relevant facts. Dr. Wright was not aware, for instance, of the mechanism of injury to Plaintiff – that is, he was not aware of what object or force acted upon Plaintiff's hand to cause the injury. *See* Wright Depo. at 20-21. He was not aware whether Plaintiff's injury occurred to his left hand or his right, or whether it occurred to the hand that rested upon the side handle of the DeWalt drill itself. *See id.* In addition, the method by which he tested his hypothesis is also problematic. Dr. Wright's report makes no reference to any examination or testing of the drill that allegedly harmed Plaintiff. His report only refers to examination and testing of an "exemplar drill." *See* Wright Report at 1-3, 6-7.[4] Dr. Wright's report also gives no indication that he operated or tested the exemplar drill in a manner consistent with Plaintiff's account of his operation of the drill prior to his alleged injuries. His conclusion as to the effect of the variable speed trigger on the stability of the drill and its side handle is not based upon testing but, rather, arises from negative user reviews he read on *Amazon.com*'s sales page for the DeWalt drill. *See* Wright Report at 5.

---

[4] At his deposition, Dr. Wright stated that he did have an opportunity to "look at" the drill that allegedly harmed Plaintiff, but he stated that he did not take it with him, and he made no reference to any analysis conducted on any drill other than an exemplar of the same model. *See* Wright Depo. at 11.

9

As for Dr. Wright's conclusions regarding the instability of the coefficient of friction between the DeWalt drill and its side handle, he did not provide evidence that these conclusions had been peer-reviewed or that his methods had gained widespread acceptance in the scientific community. *See Amorgianos,* 303 F.3d at 267 ("'[A]ny step that renders the analysis unreliable under the *Daubert factors* renders the expert's testimony inadmissible.'" (quotation and other citation omitted)).

Most importantly, Dr. Wright did not properly offer an alternative design for the DeWalt drill's side handle that would be "feasible, practical, economical and safe," or that manufacturers of similar equipment have used such a design. *See generally*, Wright Report;[5] *Quiles,* 2012 WL 1355262, at *4.

Accordingly, for all of these reasons, the Court grants Defendant's motion to exclude Dr. Wright's testimony and dismisses Plaintiff's second cause of action for defective design.[6]

---

[5] As noted above, Dr. Wright's report stated that the DeWalt drill "lacked" a tongue-in-groove design for the side handle attachment ring, but the report contained no discussion of the feasibility, practicality, or economics of such a design, nor did the report describe other manufacturers' use of such a design. *See* Wright Report at 2. In an affidavit filed on November 25, 2013, Dr. Wright did state that other manufacturers utilize an alternative design for side handles on handheld power drills. *See* Wright Aff. at ¶ 11. The deadline for discovery submissions was September 30, 2013. *See* Dkt. No. 16, Scheduling Order at ¶ 1. This submission clearly violates Rule 26 of the Federal Rules of Civil Procedure; and, therefore, the Court will not consider it. *See* Fed. R. Civ. P. 26(a)(2)(B). Furthermore, even if the Court were to consider this additional evidence, Dr. Wright's untimely statements do not satisfy the *Quiles* requirement that the other manufacturers' equipment be similarly feasible, practical, economical, and safe. *See Quiles,* 2012 WL 1355262, at *4.

[6] The exclusion of Dr. Wright's testimony is fatal to Plaintiff's second cause of action because Plaintiff requires such evidence to establish that the design defect "was a substantial factor in causing plaintiff's injury." *Quiles*, 2012 WL 1355262, at *4 (citing *Voss*, 59 N.Y.2d at 107).

**D.**   *Plaintiff's third cause of action for failure to warn*

In order to make a *prima facie* claim for failure to warn, a plaintiff must establish that the manufacturer has a duty to warn, that the duty to warn extends to dangers resulting from the foreseeable uses about which the manufacturer knew or should have known, and that the failure to warn constituted a proximate cause of the plaintiff's injuries.  *See Barrett v. Black & Decker (U.S.), Inc.*, No. 06 Civ. 1970, 2008 WL 5170200, *10 (S.D.N.Y. Dec. 9, 2008) (citation omitted); *see also Liriano v. Hobart,* 92 N.Y.2d 232, 243 (1998).  There exists no duty to warn of known or foreseeable dangers, where the dangers are obvious and/or the user is fully aware of them.  *See Liriano*, 92 N.Y.2d at 241; *see also Monell v. Scooter Store, Ltd.*, 895 F. Supp. 2d 398, 414-15 (N.D.N.Y. 2012).  Although manufacturers have a duty to warn against latent dangers due to intended uses and foreseeable unintended uses of their products, *see Liriano*, 92 N.Y.2d at 237, courts may decide that there is no duty to warn or that such duty has been discharged under the "knowledgeable user exception."  *Travelers Ins. Co. v. Fed. Pac. Elec. Co.,* 625 N.Y.S.2d 121, 123 (1st Dep't 1995).  The burden is upon the plaintiff to prove that the specific warnings provided were inadequate, that any additional warnings would have prevented the plaintiff's injuries, and that the inadequacy of the warnings constituted a proximate cause thereof.  *See Monell*, 895 F. Supp. 2d at 413 (quoting *Henry v. Rehab Plus,* 404 F. Supp. 2d 435, 442 (E.D.N.Y. 2005)) (other citation omitted).

In the case at bar, Plaintiff's claim of failure to warn is predicated upon the contention that no instructions exist explaining how to tighten the side handle and defining the amount of torque necessary to sufficiently tighten the side handle.  *See* Response to Interrogatories at ¶ 15.  The warning provided with the drill was as follows:

> Side Handle WARNING: To reduce risk of personal injury,
> ALWAYS operate the tool with side handle properly installed and

11

>tightened. Failure to do so may result in the side handle slipping
>during tool operation and subsequent loss of control. Hold tool
>with both hands to maximize control. . . . The side handle clamps
>to the front of the gear case and can be rotated 360 degrees to
>permit right or left hand use.

*See id.* Plaintiff testified that he tried several times to tighten the side handle's connection to the DeWalt drill by twisting the slide grip and did not find any resistance at first. *See* Bourassa Depo. at 25. He testified that he did eventually manage to "get it right" when he "felt the resistance and [he] was able to tighten it in that position." *See id.*

Plaintiff's evidence indicates that his circumstances at the time of the injury were similar to those of the plaintiff in *Pinello*, whose testimony showed that "he understood the machine he was using, like all power tools with rotating parts, is subject to reactive forces, and that certain steps must be followed to control the machine and minimize the risks related to those forces." *Pinello*, 2011 WL 1302223, at *12. Based upon such evidence, the court found that the knowledgeable user exception applied in *Pinello* and therefore dismissed the plaintiff's failure to warn claim. *See id.* at *14. Similarly, in this case, the Court finds that the knowledgeable user exception applies and, accordingly, grants Defendant's motion with regard to Plaintiff's third cause of action for failure to warn.

**E.**     *Plaintiff's fourth cause of action for strict products liability*

Plaintiff has not alleged that the DeWalt drill violates any statute, code, regulation, or industry trade practice. Instead, Plaintiff's strict products liability claim is predicated upon his allegation of a design defect and failure to warn. *See* Complaint at ¶¶ 41-44.[7] For the reasons stated in Parts C and D, *supra*, this Court finds that the design defect and failure to warn claims

---

[7] Plaintiff also alleges in his Complaint that the DeWalt drill contained a manufacturing defect but has since admitted that he has no such claim. *See* Response to Interrogatories at 11.

12

lack merit. Accordingly, this Court grants Defendant's motion with regard to Plaintiff's fourth cause of action for strict products liability.

**F.**     ***Plaintiff's fifth cause of action for breach of express and implied warranty***

Plaintiff has made no specific reference to any express warranties involved in his purchase or use of the DeWalt drill. Plaintiff alleges that an implied warranty of merchantability existed for the drill's intended use. *See* Complaint at ¶¶ 48-49. Plaintiff's claim of breach of that implied warranty is predicated upon his allegations that the drill was defective and that Defendant failed to warn Plaintiff about this defect. *See* Complaint at ¶¶ 51-53, 55-56, 60-62. For the reasons stated in Parts C and D, *supra*, this Court finds that the design defect and failure to warn claims lack merit. Accordingly, this Court dismisses Plaintiff's fifth cause of action for breach of express and implied warranty.

## IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to exclude the expert testimony of Plaintiff's witness, Roger N. Wright, and for summary judgment dismissing Plaintiff's complaint in its entirety, *see* Dkt. No. 17, is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED**

Dated: August 7, 2015
      Syracuse, New York

                                      Frederick J. Scullin, Jr.
                                      Senior U. S. District Judge